No. 22-12898-P

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

Darryl Stinski,

*Petitioner-Appellant*,

v.

Warden, GDCP,

*Respondent-Appellee*.

On Appeal from the United States District Court for the Southern District of
Georgia (Savannah Division)
No. 4:18-cv-66

---

## PETITIONER-APPELLANT'S REPLY BRIEF

---

Jeffrey A. Fuisz
Sheila S. Boston
Robert Grass
Lori B. Leskin (application for admission pending)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street, New York, NY 10019-9710
Tel: 212.836.8000

Richard K. Hines, V
Lucas A. Westby
NELSON MULLINS RILEY & SCARBOROUGH
Atlantic Station, 201 17th Street NW, Suite 1700, Atlanta, GA 30603
Tel: 404.322.6272

*Attorneys for Appellant Darryl Stinski*

No. 22-12898-P
**Darryl Stinski v. Warden, GDCP**

**CERTIFICATE OF INTERESTED PERSONS**

Undersigned counsel certify that the following persons may have an interest in the outcome of this case:

Arnold & Porter Kaye Scholer LLP - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Baker, The Honorable R. Stan - United States District Judge for the Southern District of Georgia;

Bass, Jr., The Honorable James F. - Senior Judge for the Eastern Judicial Circuit of Georgia who presided during Mr. Stinski's trial;

Boston, Sheila S. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Brooks, Stephen M. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Burris, C. Kawezya - Counsel for Mr. Stinski during state postconviction proceeding;

Burton, Beth A. - Deputy Attorney General for the State of Georgia during state and federal postconviction proceedings;

Carr, Christopher M. - Attorney General for the State of Georgia during federal postconviction proceeding;

Chatman, Bruce - Former Warden at Georgia Diagnostic and Classification State Prison and defendant in state postconviction proceedings;

Dozier, Gregory C. - Former Commissioner of the Georgia Department of Corrections and defendant in federal postconviction proceedings;

Ford, Benjamin - Former Warden at Georgia Diagnostic and Classification State Prison and defendant in federal postconviction proceeding;

Fuisz, Jeffrey A. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Graham, Sabrina - Senior Assistant Attorney General for the State of Georgia during state and federal postconviction proceedings;

Grass, Robert M. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Hines, V, Richard K. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Humphrey, Carl - Former Warden at Georgia Diagnostic and Classification State Prison and defendant in state postconviction proceeding;

Iannuzzi, Kate - Assistant Attorney General for the State of Georgia during state postconviction proceeding;

Leskin, Lori B. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Lock, David T. - Chief Assistant District Attorney for the Eastern Judicial Circuit of Georgia during Mr. Smith's trial;

McConnell, Greg - Assistant District Attorney for the Eastern Judicial Circuit of Georgia during Mr. Smith's trial;

Nankali, Natasha - Counsel for Council of Superior Court Judges of Georgia in state postconviction proceeding;

Nelson Mullins Riley & Scarborough LLP - Counsel for Mr. Stinski during state and federal postconviction proceedings;

O'Kelley, Dorian - Co-defendant;

Olens, Samuel S. - Attorney General for the State of Georgia during state postconviction proceeding;

Pittman, Kimberly - victim;

Pittman, Susan - victim;

Schiavone, Michael - Trial counsel for Mr. Stinski;

Scott, John W. - Counsel for Mr. Stinski during state postconviction proceeding;

Sellers, Eric - Former Warden at Georgia Diagnostic and Classification State Prison and defendant in state postconviction proceeding;

Short, Jason - Counsel for Mr. Stinski during state postconviction proceeding;

Sizemore, Jr., The Honorable W. James - Judge for the Southwestern Judicial Circuit of Georgia who presided at state postconviction proceeding;

Sparger, Steven - Trial counsel for Mr. Stinski;

Stinski, Darryl Scott - Petitioner-Appellant;

Upton, Stephen - Former Warden at Georgia Diagnostic and Classification State Prison and defendant in state postconviction proceeding;

Watkins, Mitchell - Assistant Attorney General for the State of Georgia during state postconviction proceeding;

Weinberger, Dana - Assistant Attorney General for the State of Georgia during state postconviction proceeding;

Westby, Lucas A. - Counsel for Mr. Stinski during state and federal postconviction proceedings;

Yancey, II, Willie T. - Trial counsel for Mr. Stinski

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................C-1

TABLE OF CONTENTS..................................................................................... i

TABLE OF CITATIONS ..................................................................................... ii

SUMMARY OF THE ARGUMENT ........................................................................1

ARGUMENT ........................................................................................................3

I.      PYE IS NOT DISPOSITIVE............................................................................3

II.     RESPONDENT'S ANALYSIS CONFIRMS THAT, IN APPLYING
SECTION 2254(d)(2), THE DISTRICT COURT FAILED TO
CONSIDER THE ENTIRE STATE COURT RECORD..............................5

       A.    The State Court's Decision Was Unreasonable Given Its
Findings that Petitioner's Evidence Was "Persuasive" and
"Compelling" and that Similar Evidence Was Not Presented at
Trial .........................................................................................6

       B.    The State Court's Decision Unreasonably Ignored
Contradictory Testimony and Contemporaneous Corroborating
Evidence In Finding No Deficient Performance...................8

III.    RESPONDENT'S ANALYSIS CONFIRMS THAT THE STATE
COURT'S PREJUDICE DETERMINATION WAS AN
UNREASONABLE DETERMINATION OF THE FACTS GIVEN
THE STATE COURT RECORD ................................................................13

       A.    Respondent's Prejudice Analysis Loses Sight of the Standard ..........13

       B.    The State Court's Prejudice Determination Was Based on an
Unreasonable Determination of the Facts ...........................17

CONCLUSION...................................................................................................19

CERTIFICATE OF COMPLIANCE....................................................................20

CERTIFICATE OF SERVICE .............................................................................21

i

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Hinton v. Alabama,*
571 U.S. 263 (2014)......................................................................13, 14, 15, 17

*Ledford v. Warden, Georgia Diagnostic & Classification Prison,*
818 F.3d 600 (11th Cir. 2016) ................................................................7

*Maples v. Comm'r, Ala. Dep't of Corr.,*
729 F. App'x 817 (11th Cir. 2022) ......................................................17

*Miller-El v. Cockrell,*
537 U.S. 322 (2003)..................................................................................2

*Pye v. Warden, Georgia Diagnostic Prison,*
50 F.4th 1025 (11th Cir. 2022) ................................................*passim*

*Roper v. Simmons,*
543 U.S. 551 (2005).................................................................................9

*State v. Mickelson,*
210 So.3d 893 (La. App. 2016) ............................................................18

*In re Terrorist Bombings of U.S. Embassies in East Africa,*
552 F.3d 93 (2d Cir. 2008) ...................................................................18

*United States v. Candelario-Santana,*
834 F.3d 8 (1st Cir. 2016)......................................................................18

*United States v. Kehoe,*
310 F.3d 579 (8th Cir. 2002) ...............................................................18

**Statutes**

28 U.S.C. § 2254(d)(2)...............................................................................1

28 U.S.C. § 2254(e)(1)................................................................................1

## **<u>Other Authorities</u>**

U.S. Const., amend. VI ................................................................................i

U.S. Const., amend. XIV ..............................................................................i

## SUMMARY OF THE ARGUMENT

Respondent contends that the Court's decision in *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) forecloses Mr. Stinski's appeal.  But the issue on appeal is "whether the [district court] properly applied Sections 2254(d)(2) and 2254(e)(1) of the AEDPA in the Habeas Order when evaluating Petitioner's ineffective assistance of counsel claim."  DE 75 at 1-2.  The district court's application of sections 2254(d)(2) and 2254(e)(1) muddles those provisions.  The district court required Mr. Stinski to show that individual factual findings of the state court were incorrect by clear and convincing evidence under section 2254(e)(1) to show that the state court decision was based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2).  In doing so, the district court applied a standard explicitly rejected in *Miller-El v. Cockrell*, 537 U.S. 322, 341–42 (2003) ("*Miller-El I*").  Respondent does not address Mr. Stinski's argument that nothing in *Pye* requires him to rebut any fact found by the state court by clear and convincing evidence to prevail. Even after *Pye*, to prevail, Mr. Stinski need only show that the state habeas court reached an unreasonable determination of the facts in light of the totality of the state court record.

Mr. Stinski seeks relief based on his trial counsel's ineffective assistance during the penalty phase of his capital trial, which prejudiced him.  For reasons of neglect—not strategy—trial counsel failed to present the sentencing jury with

critical and "compelling scientific evidence" about the nexus between Mr. Stinski's developmental and neuropsychological diagnosis and his actions and inactions at the time of his crimes.

Contrary to Respondent's assertions, this is not a case where the credibility of testimony is in dispute.  Nor is this a case where Mr. Stinski merely presented more detailed testimony with amplified themes during his state court post-conviction proceeding than he presented at trial.  The state court found (and the district court agreed) that Mr. Stinski presented "compelling scientific evidence" distinct from the trial evidence.  The district court nevertheless deferred to the state court's determination that trial counsel was not deficient for failing to retain neuropsychological experts to present such "compelling scientific evidence," because Mr. Stinski supposedly failed to rebut by clear and convincing evidence a state court finding about isolated testimony from trial counsel that Dr. Weilenman did not tell him that additional assistance was needed.  But, even accepting that testimony, when considered in light of the totality of the state court record, including all the testimony and documentary evidence presented in the state court that showed trial counsel was aware of the need to retain such experts and failed to do so, the state court's conclusion that trial counsel did not render constitutionally ineffective assistance is unreasonable.

These inconsistencies demonstrate the district court's uneven application of the independent standards of sections 2254(d)(2) and 2254(e)(1). In addition, the district court's errors in affording more than substantial deference to the state court's findings culminated in a prejudice analysis that loses sight of the relevant standard by focusing on a dictionary definition of "cumulative," rather than whether there is a reasonable probability of a different outcome absent trial counsel's errors.

## ARGUMENT

## I.    PYE IS NOT DISPOSITIVE

The *Pye* Court distinguished between the standard for finding that the state habeas court made a "clearly erroneous factual determination" and the standard for finding that the state's ultimate "'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *Pye v. Warden, Georgia Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (citing section 2254(d)(2)). But, as noted in Petitioner-Appellant's Opening Brief, the *Pye* Court did not hold that a petitioner must always show by clear and convincing evidence that factual findings were erroneous under section 2254(e)(1) as a prerequisite to demonstrating that a "decision" was "based on" an "unreasonable determination of the facts" under section 2254(d)(2). *See* Petitioner-Appellant's Opening Brief ("Brief") at 11-12. Notably, Respondent does not address this argument and is silent about the fact that the *Pye* Court did not address,

much less hold, that section 2254(e)(1) is a prerequisite to the 2254(d)(2) inquiry. Further, it is undisputed that section 2254(e)(1) is independent from and does not govern the reviewing court's inquiry under section 2254(d)(2). *Miller-El I*, 537 U.S. at 341 ("requir[ing] petitioner to prove that the state-court decision was objectively unreasonable by clear and convincing evidence" was "too demanding a standard"); *see* Respondent-Appellee's Opposition Brief ("Opp.") at 25 ("To be clear, that these provisions are independent is not in dispute").

But, contrary to Respondent's assertion, Opp. at 26, the district court repeatedly conflated the two sections. For example, the district court found "that the state court reasonably concluded that Petitioner's trial counsel acted reasonably in not retaining additional experts" and that "contradictory testimony [was] not enough to overcome the 'presumption of correctness' afforded to" state court factual determinations. DE 72 at 25–26; *see also id.* at 41-42 ("conclud[ing] that Petitioner failed to show that the state habeas court's decision regarding trial counsel's failure to call Herman was unreasonable as the *record amply* supports the state habeas court's findings" and "that she would have testified . . . *does not preclude* the state habeas court's finding") (emphases added); *id.* at 45 ("These findings amply support the state habeas court's decision."). But, under *Pye*, Mr. Stinksi was not required to overcome a presumption of correctness afforded to any particular state court finding

4

to show that the state court's determination that trial counsel acted reasonably was unreasonable in light of the entire state court record.[1]

Accordingly, even if "*Pye* does fully define the interplay between § 2254(d)(2) and § 2254(e)(1)," as Respondent states, Opp. at 26, the Court should reverse and remand with instructions for the district court to apply § 2254(d)(2) independently from § 2254(e)(1).

## II.  RESPONDENT'S ANALYSIS CONFIRMS THAT, IN APPLYING SECTION 2254(d)(2), THE DISTRICT COURT FAILED TO CONSIDER THE ENTIRE STATE COURT RECORD

In denying Mr. Stinski's claim for ineffective assistance of counsel during the penalty phase of his trial, the district court "concluded that the state habeas court reasonably determined that Petitioner's trial counsel was not deficient for failing to provide testimony from . . . experts [such as Drs. James, Ash, and Garbarino]."  DE 75 at 6.  In attempting to support the district court's decision, Respondent, like the district court, cites evidence in isolation and fails to consider the state court's determination in light of *all* the evidence presented in the state court proceeding as § 2254(d)(2) requires.  Thus, Respondent does not address the state court's determinations that "Petitioner's scientific evidence was persuasive" and

---

[1] Respondent contends that Mr. "Stinski did not make this argument [about *Pye*] below."  Opp. at 26.  Neither party could have made any arguments about *Pye* in the district court as *Pye* was not decided until after the judgment granting the certificate of appealability was entered.  DE 75 at 28 ("[T]he 'interaction between [Section 2254] (d)(2) and (e)(1) . . . is an open question." (alterations in original)).

"compelling" and "that trial counsel did not present the type of scientific evidence offered by Petitioner in this proceeding to 'connect the dots' between Petitioner's conduct and his adolescence," which cannot be reconciled with the state court's ultimate determination that trial counsel acted reasonably.  DE 27-20 at 4–5; Brief at 22-25.  Nor does Respondent address the testimony and contemporaneous documentary evidence that trial counsel were on notice that scientific evidence would be critical at the sentencing phase, received recommendations to retain a neuropsychological expert, and nevertheless failed to do so, which also cannot be reconciled with the state court's determination that trial counsel acted reasonably. Brief at 27-33.

### A. The State Court's Decision Was Unreasonable Given Its Findings that Petitioner's Evidence Was "Persuasive" and "Compelling" and that Similar Evidence Was Not Presented at Trial

The state court's determination that trial counsel was not deficient for failing to present purportedly cumulative testimony from experts like Drs. James, Ash, and Garbarino was unreasonable.  DE 27-20 at 4-5; Brief at 22-25.  This is not a case where the state court expressed "reasonable uncertainty" or "reasonable concerns about . . . credibility" with respect to the expert testimony offered by Mr. Stinski at the habeas proceeding.  *See Pye*, 50 F.4th at 1046.  To the contrary, the state court found that "Petitioner's scientific evidence was persuasive" and "compelling" and "that trial counsel did not present the type of scientific evidence offered by Petitioner

in this proceeding to 'connect the dots' between Petitioner's conduct and his adolescence."[2] DE 27-20 at 4–5.  In doing so, the state court further found that the testimony of Drs. James, Ash, and Garbarino was a different "type of scientific" evidence than Dr. Weilenman's trial testimony.  *Id.* at 5.

Nor, contrary to Respondent's contention, is this case about evidence that is merely "more detailed" or evidence that "amplifies the themes presented to the jury" during trial, as was at issue in *Ledford v. Warden, Georgia Diagnostic & Classification Prison*.  Opp. at 52-53 (citing *Ledford v. Warden, Georgia Diagnostic & Classification Prison*, 818 F.3d 600, 649 (11th Cir. 2016)).  In *Ledford*, the court considered whether the affidavits of lay witnesses were cumulative of the trial testimony of other lay witnesses.  Here, the state court explicitly recognized a difference in the quality and type of the scientific neuropsychological evidence presented at the state habeas proceeding and, on the other hand, the evidence presented at Mr. Stinski's trial.  *See* DE 27-20 at 4–5; *see also* Section II.A & B; Brief at 36-46 (comparing Dr. Weilenman's testimony, methodologies, and credentials to those of Drs. James, Ash, and Garbarino).  Thus, the state court's

---

[2] Dr. Weilenman's testimony plainly did not provide a sufficient basis for trial counsel to connect those dots.  In his closing argument, Mr. Sparger's only reference to the significance of the nexus between Mr. Stinski's adolescence and his conduct the night of the crimes was the following question about "the stuff": "By birthday, he was eighteen, but when you hear about the stuff, had he developed as much as most eighteen year olds?"  DE 10-11 at 1903:11–13.

conclusion that trial counsel acted reasonably is inconsistent with its own irreconcilable findings drawn from all the evidence presented in the state court proceeding.

### B.    The State Court's Decision Unreasonably Ignored Contradictory Testimony and Contemporaneous Corroborating Evidence In Finding No Deficient Performance

Respondent, like the district court, maintains that Mr. Sparger made sufficient "efforts . . . to investigate [Mr. Stinski's] mental health," and that "there is nothing unreasonable about the state court's decision that counsel could reasonably rely on an expert's analysis that further investigation was unnecessary." Opp. at 49; *see also* DE 75 at 6-7. However, Respondent, like the state court determination, fails to account for the entirety of the state court record, including the entirety of Mr. Sparger's testimony, Ms. Davis's testimony, and contemporaneous documentary evidence. It is important to note that the question is not whether trial counsel reasonably relied on Dr. Weilenman for the purpose she served. It is whether despite their knowledge that it was critical, trial counsel unreasonably failed to investigate, develop and offer the "persuasive" and "compelling scientific evidence . . . to 'connect the dots' between Petitioner's conduct and his adolescence," DE 27-20 at 4–5, that Mr. Stinski offered through Drs. James, Ash, and Garbarino at the state court hearing.

8

First, Respondent and the district court failed to address evidence showing the defense team's unanimous conclusion that Mr. Stinski would be convicted of capital murder and therefore sentencing would be the critical phase of the trial.   Based on Mr. Sparger's citation to *Roper v. Simmons*, 543 U.S. 551 (2005) in his December 2004 email and his own testimony, it was clear that Mr. Sparger knew that the sentencing phase was critical because a capital murder conviction in the guilt phase was a near certainty.  DE 19-9 at 38346.  Mr. Sparger testified that "this case was going to be not won at guilt-innocence but at the sentencing phase if it was going to be won." DE 13-16 at 249:11-17.  Mr. Sparger further testified that the defense team believed "that mitigation was more important than guilt and innocence" because, given the evidence, including Darryl's videotaped statement and gruesome autopsy photographs, Darryl likely would be convicted of a capital crime.  DE 13-15 at 138:3-14, 145:23-147:1.

Second, Respondent, like the district court, never mentions Ms. Davis's and Mr. Sparger's December 2004 email discussion about the need to retain an additional expert to prepare for a January 2005 defense team meeting—two years before the trial.  *See* Brief at 28-29.  In those emails Ms. Davis specifically notes the need for "a specialist . . . to explain the impulsiveness, lack of judgment, etc." in addition to or in lieu of Dr. Weilenman.  DE 19-9 at 38346.  In response, Mr. Sparger

acknowledged that it would be important to potential mitigation to "argue that someone who is mentally under the age of 18 should not be executed." *Id.*

Third, Respondent and the district court improperly discounted Dr. Weilenman's notes from the January 2005 defense team meeting as a "single page." Opp. at 38 (citing DE 72 at 26); *see also* DE 75 at 11. Regardless of the length of the notes, Dr. Weilenman's notes constitute *contemporaneous* evidence that corroborates that the defense team, including trial counsel, agreed that they needed to retain an additional expert to conduct psychological testing at the January 2005 defense team meeting—one month after Ms. Davis' and Mr. Sparger's email discussion about that very issue and two years before the trial. The notes referred to leading experts in the field of adolescent crime and scientific literature they had published on the subject, DE 13-19 at 835:7–837:5, 911:5–7, and corroborate Ms. Davis's email that "[t]he studies related to developmental issues" would be relevant to Darryl's case and Ms. Davis's testimony that "Dr. Weilenman was going to contact a neuropsychologist she knew." *Id.* at 835:7–20; DE 23-21 at 70747; DE 71 at 19. Indeed, Dr. Weilenman identified Dr. Jeffrey Arnett as a potential candidate. *See* DE 13-19 at 835:7–837:5, 911:5–7.

When Mr. Sparger was shown Dr. Weilenman's notes, he testified that he forgot the information but "wish[ed] [he] had known" it and that "someone . . . could present" it. DE 13-16 at 304:22–305:9. Nevertheless, Mr. Sparger, Mr. Schiavone,

and Mr. Yancey never retained Dr. Arnett or another neuropsychologist. The failure to conduct additional follow-up despite red flags relating to Mr. Stinski's developmental issues demonstrated that the defense team knew Mr. Stinski's neuropsychological diagnosis would be a major issue and unreasonably neglected to address it.

To find trial counsel's performance reasonable, the district court failed to consider all the foregoing evidence and relied exclusively on an isolated portion of Mr. Sparger's testimony that he "was never told . . . by Dr. Weilenman . . . that there was testing [that needed to be done]." DE 75 at 14 (quoting DE 13-16 at 89). But Mr. Sparger also testified that he recalled a "passing" reference at a meeting near the beginning of the trial to the possibility of retaining a neuropsychologist to examine and test Darryl. *See* DE 13-15 at 158:20-159:12 ("And at some point during the meeting, and I cannot remember if Dale said it or Dr. Weilenman—Dale Davis said it or Dr. Weilenman—there was mention of— oh, the head guy—neuropsychologist or neuropsychiatrist about maybe we should've had Darryl checked. And I mean, it was almost in passing."). It is unsurprising that eight years after the fact, Mr. Sparger could not recall the details of the discussion that the contemporaneous documentary evidence and testimony reflects occurred at the defense team's January 2005 meeting—more than two years before the trial. Brief at 28. Considering the totality of the evidence in the state court record as § 2254(d)(2) requires, trial counsel

11

rendered constitutionally ineffective assistance by failing to follow up on the strategy determined at the January 2005 meeting.

As Mr. Sparger testified, that compelling evidence and the critical link it would have established to explain Darryl's actions and inactions during his crimes was precisely "what [the] case was missing" because, although "[trial counsel] put it out there about the lesser culpability, . . . the jury never had the reason why, how could that be . . . an explanation." DE 13-16 at 305:11-306:3; *see also id.* at 337:17-20; *see also* DE 13-15 at 171:6-17 ("the part we had a problem with" was "try[ing] to explain to the jury what happened, why Darryl didn't just walk away").

Respondent argues that "[Mr. Sparger's] hindsight criticisms are worth 'little, if any weight'" because his testimony and that of every other witness with whom he interacted about his relative inexperience and unease with the responsibility for preparing and presenting the mitigation case during the penalty phase of Mr. Stinski's trial does not by itself demonstrate that his performance fell below an objectively reasonable standard. Opp. at 49. But the evidence about Mr. Sparger's inexperience in and anxiety with his role explains why he neglected to follow up on and present the compelling neuropsychological evidence that Mr. Stinski presented during the state court habeas proceeding.

12

## III.  RESPONDENT'S ANALYSIS CONFIRMS THAT THE STATE COURT'S PREJUDICE DETERMINATION WAS AN UNREASONABLE DETERMINATION OF THE FACTS GIVEN THE STATE COURT RECORD

The state court's determination that Mr. Stinski failed to establish that he was prejudiced by his trial counsel's ineffective assistance was unreasonable in light of the facts in the state court record.  Brief at 33–36.  In attempting to support the district court's contrary finding, Respondent both misapplies the prejudice standard and ignores the totality of the state court record.

### A.     Respondent's Prejudice Analysis Loses Sight of the Standard

Like the state and district court's determinations that Mr. Stinski was not prejudiced by the absence of scientific testimony like that given by Drs. James, Ash, and Garbarino, Respondent's prejudice analysis encounters pitfalls—stopping short of fully weighing the totality of the evidence.  Relying on a dictionary definition, Respondent contends that Mr. Stinski was not prejudiced because the new experts' testimony was cumulative of that given by Dr. Weilenman: "'[L]argely cumulative' is not a finding that the evidence presented at trial is as good or the same as the new evidence, but is instead a finding that the new evidence covers the same topics as the evidence presented at trial."  Opp. at 58.  In doing so, Respondent stands the prejudice standard on its head.

Prejudice turns on whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different" – not whether evidence not presented at trial covers the same topics as evidence presented at trial. *Hinton v. Alabama*, 571 U.S. 263, 272 (2014) (citation omitted). In *Hinton*, defense counsel did not know that he could request fees to pay a more qualified expert, and so retained a toolmark expert with only one eye who was not qualified to offer an opinion on firearms and toolmark identification. The Supreme Court held that this constituted deficient performance that prejudiced the defendant, rejecting the same argument that Respondent offers here and that the state and district courts erroneously accepted:

> The Court of Criminal Appeals held. . . . that Hinton could not have been prejudiced by his attorney's use of Payne rather than a more qualified expert because Payne said all that Hinton could have hoped for from a toolmark expert: that the bullets used in the crimes could not have been fired from the Hinton revolver. . . . It is true that Payne's testimony would have done Hinton a lot of good *if the jury had believed it*. But the jury did not believe Payne. And if there is a reasonable probability that Hinton's attorney would have hired an expert who would have instilled in the jury a reasonable doubt as to Hinton's guilt had the attorney known that the statutory funding limit had been lifted, then Hinton was prejudiced by his lawyer's deficient performance and is entitled to a new trial.

*Id.* at 275–76. Similarly, in *Hooks v. Workman*, the court rejected the notion that presenting some mental health evidence was enough to overcome a claim of ineffective assistance; counsel "must *connect the dots* between, on the one hand, a defendants' mental problems, life circumstances, and personal history and, on the other, his commission of the crime in question." 689 F.3d 1148, 1204 (10th Cir. 2012) (emphasis added).

14

Here, as in *Hinton*, had experts—like Drs. James, Ash, and Garbarino—more qualified than Dr. Weilenman testified in Mr. Stinski's case, there is a reasonable probability that at least one juror would have concluded that the death penalty is not appropriate in this case. *See Pye*, 50 F.4th at 1058 (Jordan, J., concurring) ("[B]ecause Georgia law requires a unanimous jury recommendation of death the focus is on whether one juror would have come to a different conclusion.") (citing *Andrus v. Texas*, 140 S. Ct. 1875, 1886 (2020)). Respondent treats Dr. Weilenman as though she was a clinical expert witness, *see* Opp. at 13–17, 54–55, even though Dr. Weilenman conducted no testing and did not diagnose Mr. Stinski. DE 10-11 at 2837:3–38:18. In fact, the prosecution highlighted Dr. Weilenman's surface-level understanding of Mr. Stinski's mental health on cross-examination, where she admitted that she had done no psychological testing of Mr. Stinski or made a diagnosis to support her assessment. DE 10-11 at 2830:23–25, 2838:16–18, 2840:1–12. In contrast, based on neuropsychological testing, Drs. Ash, James, and Garbarino provided diagnoses, explanations, and conclusions that connected the dots between Mr. Stinski's upbringing, trauma, and mental development and the crime itself. *See* Brief at 39–49.

Respondent argues that since the evidence from Ms. Davis and Dr. Weilenman was a "predicate" to the mental health evidence developed by Drs. James, Ash, and Garbarino, Mr. Stinski's prejudice argument fails because it

15

concedes that that testimony advanced the same themes.  Opp. at 57.  Respondent's contention is inconsistent with the Supreme Court's holding in *Hinton* that a finding of prejudice is not precluded merely because evidence that trial counsel failed to present advances the same things as evidence presented at trial.

In any event, Respondent's contention is like saying that because learning algebra is a predicate to learning calculus, the two are equal in complexity or utility. That plainly is not the case.  Nor was Dr. Weilenman's testimony at trial equivalent to that given by Drs. James, Ash, and Garbarino during the post-conviction proceeding.  As the state court found, it was a different "type of scientific evidence" than Dr. Weilenman presented at trial.   DE 27-20 at 5.   Thus, Dr. Weilenman provided a social history, which Dr. Garbarino explained is "part of the raw materials from which an analysis comes." DE 13-21 at 1349:23-1350:17.  Drs. James, Ash, and Garbarino built upon the material to provide a fulsome scientific analysis that directly connected Mr. Stinski's "mental problems, life circumstances, [ ] personal history and. . . . his commission of the crime" which the jury was deprived of hearing before sentencing Mr. Stinski to death.  *Hooks*, 689 F.3d at 1204.  Dr. Weilenman, by her own admission, did no such thing.  *See, e.g.*, DE 10-11 at 2830:23–25, 2838:16–18 (testifying she did not perform diagnostic testing and was presenting Darryl's "social history"); *id.* at 2840:1-12 ("Q. And your job was to—not to assess any criminal responsibility on this defendant's part. Is that correct?  A. Correct.").

16

**B.     The State Court's Prejudice Determination Was Based on an Unreasonable Determination of the Facts**

As discussed above, the state court ignored its own findings that the mental health evidence developed by Drs. James, Ash, and Garbarino was "persuasive," "compelling," and a different "type of scientific" evidence than the testimony presented at trial, and "'connect[ed] the dots' between Petitioner's conduct and his adolescence."  DE 27-20 at 4–5; *see also* DE 72 at 27.  These findings—which are entitled to as much deference by the district court under AEDPA as adverse findings—are squarely at odds with the state court's conclusion that Mr. Stinski was not prejudiced because the new mental health evidence was cumulative of Dr. Weilenman's testimony.  This conclusion, therefore, is based on an unreasonable determination of the facts, and the district court's failure to recognize it as such demonstrates that it did not properly consider the state court's determination in light of all the evidence in the state court record.

Given that Drs. James, Ash, and Garbarino presented scientific analyses different from and more compelling than the social history offered by Dr. Weilenman, *see* Brief at 39–49, the district court should have evaluated and weighed the totality of evidence adduced at trial and in the habeas proceeding and analyzed whether there was a reasonable probability that just one juror would have recommended a life sentence over the death penalty.  *See Hinton*, 571 U.S. at 275–76; *Maples v. Comm'r, Ala. Dep't of Corr.*, 729 F. App'x 817, 827 (11th Cir. 2022)

17

("Here, we are tasked with reweighing all of the aggravating and mitigating circumstances as a whole. And in doing so, we are hard pressed to conclude that there is *no* reasonable probability that a jury would have recommended a life sentence over the death penalty"); *Pye*, 50 F.4th at 1058 (Jordan, J., concurring) ("[T]he focus is on whether one juror would have come to a different conclusion"). The district court's finding that "it is hard to imagine that any amount of mitigating evidence" could have overcome the aggravating factors demonstrates that it failed to appropriately consider all of the available evidence. DE 72 at 32–34. A sentencing jury and court are required to consider the totality of the evidence even in highly aggravated cases, and in fact juries have declined to impose the death penalty in such cases. *See United States v. Candelario-Santana*, 834 F.3d 8, 15 (1st Cir. 2016); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 101 (2d Cir. 2008); *United States v. Kehoe*, 310 F.3d 579, 583 (8th Cir. 2002); *State v. Mickelson*, 210 So.3d 893, 895 (La. App. 2016). This Court should reverse the district court's judgment because it failed to properly evaluate and weigh the evidence.

18

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand to the district court with instructions to apply the appropriate standard.

March 15, 2023

Respectfully submitted,

*/s/ Jeffrey A. Fuisz*

Jeffrey A. Fuisz
Sheila S. Boston
Robert M. Grass
Lori B. Leskin (application for admission pending)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Tel:  212.836.8000
Fax:  212.836.8589
jeffrey.fuisz@arnoldporter.com
sheila.boston@arnoldporter.com
robert.grass@arnoldporter.com
lori.leskin@arnoldporter.com

Richard K. Hines, V
Georgia Bar No. 356300
Lucas A. Westby
Georgia Bar No. 594008
NELSON MULLINS RILEY & SCARBOROUGH
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, GA 30603
Tel:  404.322.6272
Fax:  404.322.6050
richardhines@nelsonmullins.com
lucas.westby@nelsonmullins.com

*Attorneys for Appellant Darryl Stinski*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,412 words.  I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman, 14-point font.


Date:  March 15, 2023

*/s/ Jeffrey A. Fuisz*
Jeffrey A. Fuisz

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing document to be served on all counsel of record by filing it on the Court's docket through the CM/ECF system on March 15, 2023.

*/s/ Jeffrey A. Fuisz*
Jeffrey A. Fuisz