[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12898

_____

DARRYL SCOTT STINSKI,

Petitioner-Appellant,

*versus*

WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:18-cv-00066-RSB

_____

Before Rosenbaum, Grant, and Abudu, Circuit Judges.

PER CURIAM:

Petitioner Darryl Stinski was sentenced to death in Georgia state court for the murders of Susan and Kimberly Pittman. He appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. The district court granted Stinski a certificate of appealability ("COA") on one issue.

After a thorough review of the record and with the benefit of oral argument, we affirm the district court's denial of Stinski's habeas petition.

## I.    BACKGROUND

### A.    Facts of Conviction

The Supreme Court of Georgia set forth the facts of the case as follows:

> The evidence at trial showed that Darryl Stinski and Dorian O'Kelley engaged in a crime spree that spanned April 10–12, 2002. On the night of April 10, two police officers observed two men dressed in black clothing in a convenience store. Later, the officers responded to two separate calls regarding the sounding of a burglar alarm at a nearby home and the officers returned to the store after responding to each call. Then, at approximately 5:00 a.m. on April 11, the officers noticed while leaving the store that "the sky was lit up." The officers discovered the victims' house fully engulfed in flames. As one of the officers moved the patrol vehicle to block traffic in preparation for

the arrival of emergency vehicles, his headlights illuminated a wooded area where he observed the same two men that he and his partner had observed earlier in the convenience store. O'Kelley, as the neighbor living across the street from the burned house, gave an interview to a local television station. The officer saw the interview on television and identified O'Kelley as being one of the men he had seen in the convenience store and near the fire. The officer later identified both Stinski and O'Kelley in court.

Stinski and O'Kelley left items they had stolen with friends who lived nearby. The friends handed those items over to the police. Testimony showed that, before their arrest, O'Kelley had bragged about raping a girl and keeping one of her teeth as a memento and Stinski had laughed when he saw O'Kelley being interviewed on the news in front of the victims' house.

Stinski gave two videotaped interviews with investigators after his arrest, the second of which was suppressed on his motion. In the interview the jury heard, Stinski confessed to participating in the crime spree described below, which began with burglarizing a home and leaving when a motion detector in this first home set off an alarm. After their botched burglary of the first home, Stinski and O'Kelley turned off the electricity to the home of Susan Pittman and her 13–year–old daughter, Kimberly Pittman, and entered as both victims slept. O'Kelley took a walking cane and began beating Susan Pittman, while Stinski

held a large flashlight. Stinski beat Susan Pittman with the flashlight and then left the room to subdue Kimberly Pittman, who had awakened to her mother's screams. O'Kelley then beat Susan Pittman with a lamp and kicked her. At some point, Susan Pittman was also stabbed three to four times in the chest and abdomen. Stinski took Kimberly Pittman upstairs so she would not continue to hear her mother's screams. Susan Pittman eventually died from her attack. Stinski and O'Kelley then brought Kimberly Pittman back downstairs, drank beverages, and discussed "tak[ing] care of" her. Stinski took Kimberly Pittman back upstairs and bound and gagged her. As Stinski rummaged through the house downstairs, O'Kelley raped Kimberly Pittman. Stinski and O'Kelley then agreed that Stinski would begin beating Kimberly Pittman with a baseball bat when O'Kelley said a particular word. On cue, Stinski hit Kimberly Pittman in the head with the bat as she knelt on the floor, bloody from the rape and with her hands bound. O'Kelley then slit Kimberly Pittman's throat with a knife but she remained alive. Stinski went downstairs and came back upstairs when O'Kelley called him. Stinski then hit Kimberly Pittman in her knee with the bat as O'Kelley tried to suffocate her. O'Kelley then took another knife and stabbed her in the torso and legs. O'Kelley kicked her and threw objects at her head, but her groans indicated that she was still alive. Stinski and O'Kelley then set fires throughout the house and went to O'Kelley's house across the street to watch the fire. Kimberly

Pittman died of smoke inhalation before the fire fully consumed the house.  Later, in the early morning hours of April 12, Stinski and O'Kelley broke into numerous vehicles in the neighborhood.

*Stinski v. State*, 286 Ga. 839, 840–41 (2010).

## B.    Procedural History

### 1.    *Pre-Trial Preparation*

In June 2002, Stinski was indicted by a grand jury on two counts of malice murder and related charges, and the prosecutors sought the death penalty.[1]  *Id*. at n.1.  Three attorneys were appointed to represent Stinski.  *Stinski v. Warden*, No. 2011-V-942, at 6 (Super. Ct. Butts Cnty. Ga. Jan. 15, 2017).  Trial counsel's mitigation strategy involved showing that Stinski "[got] caught up" in the crime due to his immaturity, troubled background, and O'Kelley's influence.  State Habeas Hr'g Tr. vol. 1, 171:6–17, ECF No. 13-15.

Counsel retained two experts for the mitigation phase of trial:  Dale Davis, a social worker and mitigation specialist, and Dr. Jane Weilenman, a clinical psychologist.  *Id*. at 147:16–148:24, 159:22–161:5.

To prepare for her testimony, Davis met with Stinski "many times," interviewed forty people, and prepared an "extensive" social history on Stinski, billing over 400 hours to the case.  *Stinski*,

---

[1] O'Kelley was tried separately and convicted on two counts of malice murder and related charges.  *O'Kelley v. State*, 284 Ga. 758, 758 n.* (2008).  He also received a death sentence for the murders.  *Id*.

No. 2011-V-942, at 31–35; State Habeas Hr'g Tr. vol. 262, 73150–51, ECF No. 24-8 ("Persons Interviewed" Mem.); State Habeas Hr'g Tr. vol. 319, 90071–84, ECF No. 26-17 (Davis's billing records).

Dr. Weilenman conducted a psychological evaluation of Stinski to determine his mental-health status and social history. State Habeas Hr'g Tr. vol. 321, 90813, ECF No. 26-19 (Weilenman Psychological Evaluation).  To prepare her report and testimony, Dr. Weilenman met with Stinski at least four times, corresponded with him in writing, reviewed background documents, and conducted interviews of mitigation witnesses.  *Id.*; State Habeas Hr'g Tr. vol. 254, 70690–97, ECF No. 23-21 (written correspondence); Hr'g Tr. vol 1, 197:22–198:1, ECF No. 13-15.  Dr. Weilenman did not conduct any psychological testing, and counsel testified that she never recommended testing by additional experts, either. *Stinski*, No. 2011-V-942, at 38; Hr'g Tr. vol 1, 100:23–101:5, ECF No. 13-15; State Habeas Hr'g Tr. vol. 2, 299:1–13, ECF No. 13-16.

According to Stinski, though, several times before trial (including in a December 2004 email, a January 2005 defense-team meeting, and another meeting sometime in 2007 just before trial), Davis raised the issue of retaining additional experts besides herself and Dr. Weilenman.  State Habeas Hr'g Tr. vol. 146, 38346–47, ECF No. 19-9 (emails between Davis and counsel); State Habeas Hr'g Tr. vol. 5, 835:7–36:22, ECF No. 13-19; Hr'g Tr. vol. 1, 158:12–59:21, ECF No. 13-15.

*2.    Trial*

Trial began in May 2007.  On June 8, 2007, at the conclusion of the guilt-innocence phase of trial, the jury found Stinski guilty on all counts, including two lesser-included counts of felony murder.  Verdict Form, 34–37, ECF No. 7-11.

During the sentencing phase, trial counsel presented extensive mitigation evidence, calling twenty-six witnesses to testify, including Davis and Dr. Weilenman.  *Stinski*, No. 2011-V-942, at 42–68.  Many witnesses testified about Stinski's childhood and background, including his frequent moves, his parents' divorce, his experiences of abuse and neglect, and his family's history of alcoholism and mental-health issues.  *Id.*  Several of his former classmates and a teacher testified to Stinski's nature as a "follower" and his attempts to fit in with others.  *Id.* at 49–50, 56.  And several also testified about O'Kelley and his potential influence on Stinski.  *Id.* at 43.

Besides these witnesses, trial counsel called the two retained experts, Davis and Dr. Weilenman, to testify during the sentencing phase.  Through Davis, the mitigation specialist, "several volumes of records" and a social history on Stinski were introduced into the record.  *Id.* at 45; Trial Tr. vol. 11, 2350–455, ECF No. 10-9.

Dr. Weilenman's testimony built upon the records and history introduced by Davis and the other mitigation witnesses, explaining how Stinski's entire background, not just the immediately preceding events, led to the crime.  *Stinski*, No. 2011-V-942, at 61; Trial Tr. vol. 13, 2766–845, ECF No. 10-11.  Dr. Weilenman testified

extensively about the general themes of instability, neglect, abandonment, and abuse in Stinski's childhood. *Stinski*, No. 2011-V-942, at 61; Trial Tr. vol. 13, 2771–827, ECF No. 10-11. Throughout her testimony, Dr. Weilenman also noted Stinski's various mental-health diagnoses, including attention-deficit/hyperactivity disorder, "adjustment disorder with depressed features," a potential learning disability, and post-traumatic stress disorder. Trial Tr. vol. 13, 2817:3–20, ECF No. 10-11. In explaining Stinski's diagnoses and general immaturity, Dr. Weilenman discussed the development of the frontal lobes and Stinski's executive functioning, suggesting that his impulse control and follower tendencies may have improved with time, post-crimes. *Id.* at 2817:20–18:17, 2819:12–20:12, 2822:2–85:22.

At the end of the sentencing phase, on June 12, 2007, the jury found that nine aggravating factors warranted the death sentence for Stinski for the murders of the Pittmans:

> [1] The offense of murder [of Susan Pittman] was committed while the defendant was engaged in the commission of a burglary. . . .
> [2] The offense of murder [of Susan Pittman] was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind of the defendant[,] or
> [3] The offense of murder [of Susan Pittman] was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim before death. . . .

[4] The offense of murder [of Kimberly Pittman] was committed while the defendant was engaged in the commission of another capital felony (the murder of Susan Pittman)[.]

[5] The offense of murder [of Kimberly Pittman] was committed while the defendant was engaged in the commission of a burglary.

[6] The offense of murder [of Kimberly Pittman] was committed while the defendant was engaged in the commission of arson in the first degree.

[7] The offense of murder [of Kimberly Pittman] was outrageously or wantonly vile, horrible, or inhuman in that it involved torture to the victim before death[,] or

[8] The offense of murder [of Kimberly Pittman] was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind of the defendant[,] or

[9] The offense of murder [of Kimberly Pittman] was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim before death.

Verdict Sentencing Form, 210–13, ECF No. 8-11.  The trial court denied Stinski's motion for a new trial, *Stinski*, No. 2011-V-942, at 2, and the Georgia Supreme Court affirmed Stinski's convictions and death sentence, *Stinski*, 286 Ga. at 840, *cert. denied, Stinski v. Georgia*, 562 U.S. 1011 (2010).

### 3. State Court Habeas Proceedings

Stinski filed a petition for a writ of habeas corpus in the Superior Court of Butts County on September 26, 2011, State Pet. Writ Habeas, ECF No. 11-19, and amended his petition on March 21, 2013, State First Am. Pet. Writ Habeas, ECF No. 12-24. Stinski argued, among other claims, that his trial counsel rendered ineffective assistance during the sentencing phase of trial. *Id.* at 9–24.

The state habeas court held an evidentiary hearing at which twenty witnesses were called, *Stinski v. Ford*, No. 4:18-CV-66, 2021 WL 5921386, at *6 (S.D. Ga. Dec. 15, 2021); *Stinski*, No. 2011-V-942, at 2, including three additional experts: Dr. Joette James, a clinical neuropsychologist, State Habeas Hr'g Tr. vol. 6, 1150–263, ECF No. 13-20; Dr. Peter Ash, a forensic psychiatrist, State Habeas Hr'g Tr. vol. 3, 417–579, ECF No. 13-17; and Dr. James Garbarino, a developmental psychologist, State Habeas Hr'g Tr. vol. 7, 1322–445, ECF No. 13-21. As a part of his ineffective-assistance-of-counsel claim, Stinski argued that his trial counsel unreasonably neglected to procure and present expert mental-health mitigation evidence from the three doctors. *Stinski*, No. 2011-V-942, at 81.

The additional proposed expert testimony focused on deficiencies or abnormalities in Stinski's brain functioning, caused by the psychological maltreatment he experienced in childhood, that could have made him particularly vulnerable to outside influence in a high-stress situation. The testimony thus implicated Stinski's culpability on the night of the crime. Hr'g Tr. vol. 6, 1220:10–21:8, ECF No. 13-20; Hr'g Tr. vol. 3, 477:2–20, ECF No. 13-17; Hr'g Tr.

vol. 7, 1411:6–16, ECF No. 13-21.  Two experts, Dr. James and Dr. Ash, conducted cognitive-function testing.  Hr'g Tr. vol. 6, 1159–61, ECF No. 13-20; Hr'g Tr. vol. 3, 463–67, 473, ECF No. 13-17.  All three experts reviewed Dr. Weilenman's social history as a part of their analysis.  Hr'g Tr. vol. 6, 1258:17–20, ECF No. 13-20; Hr'g Tr. vol. 3, 437:7–12, ECF No. 13-17; Hr'g Tr. vol. 7, 1411:19–20, ECF No. 13-21.

The Georgia State Superior Court denied Stinski's habeas petition.  *Stinski*, No. 2011-V-942, at 1.  In relevant part, the state habeas court addressed both prongs of the *Strickland* test regarding Stinski's    ineffective-assistance-of-counsel-at-the-sentencing-stage claim.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (defining the two-part test for ineffective assistance of counsel as requiring the defendant to show that (1) counsel's performance was deficient and (2) that deficient performance prejudiced the defense).

As to deficient performance, the court found that trial counsel was "reasonable in retaining Dr. Weilenman and relying upon her findings, which did not include any recommendation of further testing" or additional experts.  *Stinski*, No. 2011-V-942, at 38. "Where, as here, trial counsel presented substantial mitigation, but did not employ the additional means of mitigation as urged by Petitioner," counsel was not ineffective for not pursing that line of investigation, the court concluded.  *Id*.

As to the prejudice prong, the state habeas court found that Stinski's trial attorneys "effectively presented much of the same factual evidence urged by Petitioner" and his chosen experts related

to his life circumstances, immaturity, susceptibility to O'Kelley's influence, and developmental issues. *Id*. at 5, 80–83 ("The fact that Petitioner's new expert witnesses may provide additional details regarding similar conclusions does not equate to a showing of prejudice."). Because the subject matter raised by Stinski's habeas witnesses was "largely cumulative" of the testimony actually and effectively presented at trial, the court found, Stinski had not adequately demonstrated prejudice. *Id*. at 5, 42, 80. And "[c]onsidering the overwhelming evidence in aggravation," the court concluded that "new evidence of Petitioner's subtle neurological impairments" would not, "in reasonable probability," have altered the outcome of the sentencing phase." *Id*. at 80. Accordingly, the court denied Stinski's ineffective-assistance-of-counsel claims. *Id*. at 5.

On February 5, 2018, the Georgia Supreme Court denied Stinski's application for a certificate of probable cause to appeal the denial of his habeas petition. *Stinski v. Warden*, No. S17E1093 (Sup. Ct. Ga. Feb. 5, 2018).

### 4. *Federal Court Habeas Proceedings*

Stinski timely filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Southern District of Georgia. As relevant for this appeal, Stinski argued his trial counsel "unreasonably neglected to present available expert mental health mitigation evidence, including testimonies from experts such as Dr. James, Dr. Ash, and Dr. Garbarino." *Stinski*, 2021 WL 5921386, at *7.

The district court denied Stinski's claims. *Id.* at *1. It concluded that Stinski failed to show that the state-court decision denying his ineffective-assistance-of-counsel claim was based on an unreasonable determination of the facts under § 2254(d)(2). The district court also found that the state habeas court reasonably determined that Stinski had failed to satisfy both *Strickland* prongs, *id.* at *10–16. As to the ineffectiveness prong, the district court concluded that "the state court reasonably determined that trial counsel's decision not to retain additional experts was supported by 'reasonable professional judgments.'" *Id.* at *13 (quoting *Strickland*, 466 U.S. at 690–91). The district court found that the record "at best" revealed contradictory evidence about whether Dr. Weilenman discussed the need to retain additional experts, and Dr. Weilenman never recommended additional testing. So the district court thought the record lacked enough evidence to overcome the presumption of correctness afforded to a factual determination made by the state court. *Id.* (stating that overcoming such a presumption requires "clear and convincing evidence").

As to the prejudice prong, the district court reiterated the state court's findings that Stinski's new proposed evidence was largely cumulative or duplicative of that presented at trial because it covered the same social history and themes of abuse, instability, abandonment, trauma, and neglect provided by Dr. Weilenman in the sentencing phase. *Id.* The district court also echoed the state court's finding that the evidence against Stinski was "highly aggravating," and that "it is hard to imagine that any amount of mitigating evidence could have outweighed it." *Id.* at *15–16.

On January 14, 2022, Stinski moved under Rule 59(e), FED. R. CIV. P., to alter or amend the judgment. Among other issues, Stinski argued that he was entitled to a certificate of appealability regarding his ineffective-assistance-of-counsel claim because, at the time the district-court opinion was issued, a circuit split existed on the correct application of Sections 2254(d)(2) and 2254(e)(1) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and the Eleventh Circuit had no binding precedent on the issue.

The district court granted a COA on just one issue: "whether the Court properly applied Sections 2254(d)(2) and 2254(e)(1) of the AEDPA in the Habeas Order when evaluating Petitioner's ineffective assistance of counsel claim." Order, 35, ECF No. 75. In other words, the district court explained, it granted Stinski a COA on the issue of whether it was proper for the district court "to apply Section 2254(d)(2)'s deference to the state habeas court's *decision* but apply Section 2254(e)(1)'s deference to the state habeas court's *individual findings of fact*." *Id.* at 31 (emphasis in original). Invoking the certificate of appeal that the district court granted, Stinski filed notice of this appeal on August 30, 2022.

## II.    STANDARDS OF REVIEW

This Court reviews "de novo a district court's denial of habeas relief on an ineffective-assistance-of-counsel claim, which presents a mixed question of law and fact." *Pye v. Warden*, 50 F.4th 1025, 1034 (11th Cir. 2022) (en banc). But AEDPA governs our review of federal habeas petitions. AEDPA prescribes a highly deferential framework for evaluating issues previously decided in state court. *Id.* Under AEDPA, a federal court may not grant habeas relief on claims that were "adjudicated on the merits in [s]tate court" unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d).

Regarding § 2254(d)(2), we must defer to a state court's determination of the facts unless the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." *Id.* § 2254(d)(2). Section 2254(d)(2) requires us to give state courts "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). "We may not characterize . . . state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Id.* at 313–14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "If '[r]easonable minds reviewing the record might disagree about' the state court factfinding in question, 'on habeas review that does not suffice to supersede' the state court's

factual determination." *Daniel v. Comm'r*, 822 F.3d 1248, 1259 (11th Cir. 2016) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). Regarding § 2254(e)(1), we presume that the state court's factual determinations are correct, absent clear and convincing evidence to the contrary. *Pye*, 50 F.4th at 1035.

On each claimed basis for relief, we review "the last state-court adjudication on the merits." *See Greene v. Fisher*, 565 U.S. 34, 40 (2011). In this case, where the Georgia Supreme Court's final decision "doesn't come with reasons," we must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale and presume that the unexplained decision adopted the same reasoning." *Pye*, 50 F.4th at 1034 (internal quotation marks omitted) (quoting *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)).

In sum, AEDPA sets "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

### III.    DISCUSSION

As we've noted, the district court certified the following question on appeal: "whether the Court properly applied Sections 2254(d)(2) and 2254(e)(1) of the AEDPA [in the Habeas Order] when evaluating Petitioner's ineffective assistance of counsel claim." Order, 12, 31, 35, ECF No. 75. That is, "whether it was proper for the [c]ourt to apply Section 2254(d)(2)'s deference to the

state habeas court's *decision* but apply Section 2254(e)(1)'s deference to the state habeas court's *individual findings of fact.*" *Id.* at 31 (emphasis in original). Our review is limited to this issue. *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998) ("[I]n an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA.").

After careful review of the record and with the benefit of oral argument, we conclude that the district court properly applied §§ 2254(d)(2) and 2254(e)(1) when evaluating the state habeas court's decision and factual determinations. Under § 2254(d)(2), a federal court may not grant habeas relief on claims that were "adjudicated on the merits in [s]tate court" unless the state court's decision was, among other potential exceptions, "based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." Section 2254(e)(1) further mandates that a state court's findings of fact "shall be presumed to be correct," unless rebutted "by clear and convincing evidence." While the Supreme Court has not yet defined the precise relationship between these two provisions, *Burt v. Titlow*, 571 U.S. 12, 18 (2013), since the district court granted its COA, our binding precedent has definitively answered the question certified for appeal in this case.

In *Pye v. Warden*, we held, in an en banc opinion, that (1) a petitioner must meet § 2254(e)(1)'s "clear and convincing evidence" burden to overcome the presumption of correctness applied to state-court factual determinations, and (2) even if a

petitioner successfully meets that burden, he has not necessarily met his burden under § 2254(d)(2).  50 F.4th at 1035.  That is, "that decision might still be reasonable even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination."  *Id.* (quotation marks omitted).  *Pye* makes clear that Sections 2254(e)(1) and 2254(d)(2) are independent hurdles to relief.  *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (noting that subsections (e)(1) and (d)(2) are "independent requirements")).

    *Pye* also analyzed the reasonableness of the state court's determinations there "with respect to each alleged deficiency, and with respect to the deficiencies cumulatively."  *Id.* at 1042.  For each alleged deficiency, the court first resolved challenges to the state habeas court's factual determinations, finding that even where the state court's assessment "might have been debatable," its factual findings were not "clearly and convincingly erroneous."  *Id.* at 1043 (cleaned up).  Then the court determined that each individual deficiency was reasonably found nonprejudicial by the state habeas court.  *Id.* at 1043–1055 (finding the weight that the state court gave to each factor in its prejudice analysis was not unreasonable in light of the factual record); *id.* at 1049 ("None of [the state habeas court's] choices individually resulted in a decision that . . . was based on an unreasonable determination of the facts.").

    Finally, the court looked at the deficiencies cumulatively and the reasonableness of the state habeas court's ultimate conclusion:

"Even if the state court's prejudice determination as to each ground of allegedly deficient performance was reasonable, we must still decide whether its conclusion as to the cumulative prejudice constituted an unreasonable application of *Strickland*." *Id.* at 1055. Ultimately, the *Pye* court concluded that, "[g]iven the reasonableness of the state court's weighing of the evidence and the lack of contrary precedent, AEDPA requires us to defer to that court's cumulative-prejudice conclusion because it wasn't . . . based on an unreasonable determination of the facts." *Id.* at 1056 (citing § 2254(d)).

Although the district court decided Stinski's habeas claim before we issued *Pye*, the district court was spot on in its analysis. Indeed, the district court articulated the same standard and followed the same application as we did in *Pye*.

In particular, the district court stated that § 2254(e)(1)'s burden applied to state-court findings of fact, *Stinski*, 2021 WL 5921386, at *8 ("The Court 'presume[s] findings of fact made by state courts are correct, unless a petitioner rebuts that presumption by clear and convincing evidence.'"), and that § 2254(d)(2) set the standard for reviewing state-court decisions, *id.* ("Regarding Section 2254(d)(2), the Court must 'evaluat[e] whether a state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.'" (quotation marks omitted)). The district court then applied § 2254(e)(1)'s presumption of correctness to state-court factual findings, asking whether Stinski had carried his burden to rebut

that presumption. *See id.* at *13 (finding that Stinski did not over-
come the "presumption of correctness" afforded to the state
court's determination that Dr. Weilenman did not recommend fur-
ther testing and additional experts). Then, under § 2254(d)(2), the
district court asked whether the state court's overall determination
was reasonable, given the evidence presented. *See id.* (holding that
the state court "reasonably determined that trial counsel's decision
not to retain additional experts was supported by 'reasonable pro-
fessional judgments[,]'" and that "the state habeas court reasonably
determined that Petitioner failed to establish prejudice for [any al-
leged] deficiency"). The district court followed this analysis for
both the deficient-performance and prejudice prongs of *Strickland*.
*See id.* at *9–15. Therefore, the district court properly articulated
the rules and applied them in Stinski's case.

Stinski's arguments to the contrary are unavailing. Stinski
first asserts that, in violation of *Miller-El*, 537 U.S. at 341, the district
court impermissibly combined the two standards under § 2254,
claiming that the district court required that the petitioner prove
by clear and convincing evidence that the state-court *decision*, as
opposed to *an individual finding of fact*, was objectively unreasona-
ble. *Miller-El* stands for the proposition that "AEDPA does not re-
quire petitioner to prove that a decision is objectively unreasonable
by clear and convincing evidence." 537 U.S. at 341.

But the district court did no such thing. It did not apply a
clear-and-convincing-evidence burden to § 2254(d)(2)'s unreasona-
ble-decision review. As the district court stated in its order granting

the COA and demonstrated in the underlying order itself, the district court applied § 2254(e)(1) to state-court factual findings and § 2254(d)(2) to state-court decisions—as *Miller-El* requires. *Stinski*, 2021 WL 5921386, at *8.

And to the extent that Stinski argues that the district court treated §§ 2254(e)(1) and 2254(d)(2) as compounding barriers to relief—such that an erroneous factual finding under § 2254(e)(1) was *necessary* to find an unreasonable determination of fact under § 2254(d)(2)—the district court did not do this, either. It merely asked, where the petitioner attempted to rebut a state-court factual finding, whether he had done so with clear and convincing evidence. *See Stinski*, 2021 WL 5921386, at *13. Then, it looked at the evidence presented before the state court and asked if its ultimate determination was reasonable. *See id.* So the district court relied on the state court's undisturbed factual findings to hold that the state court's ultimate conclusion was not based on an unreasonable determination of fact. That is not the same thing as using § 2254(e)(1) as a prerequisite to applying § 2254(d)(2).

Nor does Stinski offer specific examples of where he believes the district court improperly "merged" the standards or treated § 2254(e)(1) as a prerequisite in its application of the rule. Instead, Stinski advocates for an entirely new rule.

Stinski argues that § 2254(e)(1)'s burden applies to only *new* evidence presented to the district court, not evidence that was also presented to the state court. In so arguing, he implies that we should adopt the Ninth Circuit's (former) approach to § 2254: first,

resolve "intrinsic" challenges to the state court's decision under § 2254(d)(2)'s "unreasonable determination" standard; then, if the state court's fact-finding process survives, or if no intrinsic challenge is raised, look to any new or "extrinsic" evidence presented for the first time in federal court and see if it survives § 2254(e)(1)'s clear-and-convincing-evidence standard. *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), *overruled by Pinholster*, 563 U.S. at 185; *Hayes v. Sec'y*, 10 F.4th 1203, 1223 (11th Cir. 2021) (Newsom, J., concurring) (stating that the Ninth Circuit alone has held that "§ 2254(e)(1)'s presumption applies only when a habeas petitioner presents new evidence in federal court"). Stinski contends that because he presented no "new" evidence to the district court, § 2254(e)(1)'s clear-and-convincing-evidence burden should not have been applied to his challenge.

But we rejected the Ninth Circuit's approach in *Pye*, where we articulated and applied a contrary standard. 50 F.4th at 1052–53 (applying § 2254(e)(1)'s "clear and convincing" evidence standard where the petitioner presented no new evidence to rebut a state habeas court finding). We also noted previous cases in our Circuit that declined to follow the Ninth Circuit's approach in *Taylor*. *Id.* at 1040 n.9 (citing *Landers v. Warden*, 776 F.3d 1288, 1298 (11th Cir. 2015)); *see also Prevatte v. French,* 547 F.3d 1300, 1304 n.1 (11th Cir. 2008) (noting that "the plain language of § 2254 does not provide the basis" for petitioner's argument that § 2254(d)(2) is applicable and § 2254(e)(1) is inapplicable where no new evidence is presented to the federal court).

Besides that, even the Ninth Circuit no longer follows the approach Stinski argues for. The Supreme Court's decision in *Cullen v. Pinholster* "eliminated the relevance of 'extrinsic' challenges when we are reviewing state-court decisions under AEDPA, . . . because it held that petitioners may introduce new evidence in federal court only for claims that we review de novo. . . . Thus *Taylor*'s suggestion that an 'extrinsic' challenge may occur 'once the state court's fact-findings survive any intrinsic challenge' under § 2254(d)(2) is no longer applicable." *Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014) (citing *Pinholster*, 563 U.S. at 185).

The upshot of this is that Stinski's proposed application of § 2254(e)(1) does not comport with the law of this Circuit and is no longer even enthusiastically endorsed by the Ninth. *See also id.* at 1001 ("[O]ur panel decisions appear to be in a state of confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review of state-court factual findings. . . . We believe any tension between *Taylor* and our cases or between *Taylor* and limited statements by the Supreme Court will have to be resolved by our court en banc, or by the Supreme Court.").[2]

Finally, to the extent that Stinski's remaining arguments can be construed as a challenge under § 2254(d)(2), asserting that the

---

[2] To the extent that Stinski asks for clarity on the order in which a reviewing court must approach challenges to state-court decisions versus individual findings of fact, we decline to reach this issue, as it is not necessary to adopt a rigid approach to our system of review in order to resolve the issue on appeal.

state court's decision was based on an unreasonable determination of the facts in light of the evidence presented, these arguments are also unavailing.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. As we've noted, to succeed on an ineffective-assistance-of-counsel claim, a movant must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense. *Id.* at 687. A court need not address both prongs if a defendant has made an insufficient showing of one. *Id.* at 697. But when both *Strickland* and AEDPA apply, "the question is not whether counsel's actions were reasonable" or there was prejudice; "[t]he question is whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard" or that the errors were not preju-dicial. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (emphasis added).

In this case, trial counsel presented substantial mitigation ev-idence, and the new habeas evidence was "largely cumulative" of that presented at trial. *Stinski*, No. 2011-V-942, at 37–39, 80–83. Trial counsel presented testimony from twenty-six witnesses dur-ing the sentencing phase at trial, including two experts. *Id.* at 80. These witnesses gave an "extensive and detailed" account of Stinski's background, including the abuse and neglect he was sub-jected to as a child, giving the jury an explanation for Stinski's par-ticipation in the crime. *Id.*

As for the new expert testimony Stinski proffered in the state habeas proceeding, it merely "provide[d] additional details regarding similar conclusions" as the experts presented at trial.  *Id.* at 82; *Holsey v. Warden*, 694 F.3d 1230, 1260–61 (11th Cir. 2012) (stating that postconviction proceeding evidence is largely cumulative of that presented at trial "when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury").  The new experts covered the same themes as Dr. Weilenman's testimony:  the instability, neglect, abandonment, and abuse Stinski experienced as a child; his "follower" tendencies and susceptibility to peer pressure; and his emotional immaturity, characterized by his impulsivity and inability to consider consequences.  *Compare* Trial Tr. vol. 13, 2811–25, ECF No. 10-11, *with* Hr'g Tr. vol. 6, 1191–93, 1214, ECF No. 13-20, Hr'g Tr. vol. 3, 477–78, 491–95, 543–45, 554–55, ECF No. 13-17, *and* Hr'g Tr. vol. 7, 1339–44, 1360–81, 1396–97, ECF No. 13-21.

And the new experts offered similar bottom-line conclusions as those Dr. Weilenman testified to: that Stinski's background made him more impulsive and more easily influenced, such that a jury could infer that his background affected his behavior on the night of the crime.  *Compare* Trial Tr. vol. 13, 2823–24, ECF No.10-11, with Hr'g Tr. vol. 6, 1220–21, ECF No. 13-20, Hr'g Tr. vol. 3, 491–93, ECF No. 13-17, *and* Hr'g Tr. vol. 7, 1411:6–16, ECF No. 13-21.  That the additional experts further explained scientific terms and concepts that Dr. Weilenman had already introduced—such as executive functioning, or frontal lobe anatomy—"does not alter

the cumulative nature of the rest of the additional evidence." *Holsey*, 694 F.3d at 1264.

Ultimately, when we weigh this mitigation evidence against the nine aggravating factors that the jury found, we can't say that no reasonable jurist would have reached the same decision denying Stinski relief that the state habeas court did.

## IV.    CONCLUSION

For the foregoing reasons, the district court correctly articulated and applied the standards from §§ 2254(d)(2) and (e)(1), as clarified in this Court's decision in *Pye*. We therefore affirm the district court's denial of Stinski's habeas petition.

**AFFIRMED.**